UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPERATING ENGINEERS
LOCAL 324 PENSION FUND et
al.,

Plaintiffs,

v.

LARAMIE ENTERPRISES, INC.,
Defendant.

Case No. 22-cv-10709
Honorable Shalina D. Kumar

---

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT (ECF NO. 129)
AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (ECF NO. 130)**

---

## I.    Introduction

Plaintiffs, the various funds collecting employee benefit contributions

from unionized employers on behalf of their members (the "Funds"), filed

this ERISA collection action under 20 U.S.C. § 1145 and 29 U.S.C.

§ 1132(g)(2) for unpaid employee benefit contributions from defendant

Laramie Enterprises, Inc. ("Laramie"). ECF No. 1. The parties filed cross

motions for summary judgment. ECF Nos. 129, 130. Those motions are

fully briefed, the Court heard oral argument on June 23, 2026, and this

matter is ripe for decision. ECF Nos. 133, 134, 135, 136. For the reasons

below, the Court denies Laramie's motion for summary judgment and grants the Funds' motion for summary judgment.

## II.      Factual Background

Under the collective bargaining agreement (CBA) executed in 2018 by the International Union of Operating Engineers Local Union No. 324 and 324-A (the "Union") and Great Lakes Fabricators and Erectors Association ("GLFEA"), of which Laramie has been a member since at least 2016, Laramie was obligated to make certain employee fringe benefit contributions to the Funds for each Union member employed by Laramie and thus covered by the CBA. *See* ECF No. 27, PageID.378–79; ECF No. 130-8, PageID.5204–05. The CBA allowed for a lower fringe benefit payment for a newly-created job classification, Oiler/pumps over 6" and Ground Man/light plant/compressor/welders/pumps under 6" (the "oiler classification"). Although the parties intended for that lower fringe benefit package to apply only to new hires in that job classification, many employers, including Laramie, applied it to existing employees who were shifted to this new classification from some other classification. The parties did not intend to reduce fringe benefits (and thus employer contributions for those benefits) for any existing member/participant. ECF No. 129-2, PageID.4761–62.

To address employer confusion over the application of this new classification, GLFEA and the Union executed a Memorandum of Understanding ("MOU") in December 2018 to clarify that the oiler classification and its attendant lower fringe benefit contribution applied only to newly hired, new-to-the-trade employees, not existing employees who previously received the larger journeyman fringe benefit package. ECF Nos. 129-2, 129-4.

After the execution of the MOU, employers were required to pay the higher fringe benefit contribution for their veteran employees who had been newly reclassified as oilers. Laramie made the higher fringe benefit contributions for those employees from January to June 2019 but reverted to paying the lower contribution thereafter and through the end date of the Funds' audit in May 2020.

The Funds allege that Laramie failed to make its required contributions under the CBA, as modified by the MOU, and seek unpaid employee benefit contributions from Laramie in an ERISA collection action under 20 U.S.C. § 1145 and 29 U.S.C. § 1132(g)(2). ECF No. 1. They move for summary judgment arguing that Laramie has provided no factual or legal defense to the audit showing a due and owing balance of unpaid contributions under the CBA. ECF No. 129.

Laramie counters that the Funds charged it rates exceeding those agreed upon with the Union in the CBA and that it therefore has overpaid rather than underpaid employee benefit contributions. ECF No. 6. Although Laramie has unwaveringly maintained throughout the four years this case has been pending that GLFEA served as its authorized agent in negotiating the CBA with the Union, Laramie pivots with its present motion for summary judgment, arguing that undisputed evidence shows that Laramie never assented or otherwise authorized GLFEA to act as its bargaining agent before May 2, 2022, and thus was not bound by the MOU, which modified the CBA and was executed by the Union and GFLEA in December 2018 without Laramie's knowledge or assent. ECF Nos. 130, 134.

The Funds first argue that Laramie should be estopped from reversing its long-asserted position that GLFEA was its agent and authorized bargaining representative relative to the Union and CBAs. They further argue that Laramie is bound to the CBA and the modifying MOU, even if GLFEA was not its agent, based on Laramie's long-standing conduct manifesting its assent to be bound by the CBA between GLFEA and the Union. Finally, the Funds contend that Laramie was bound by the CBA, and the modifying MOU, based solely on its undisputed membership

in GLFEA. The Court agrees that Laramie was bound by the terms of the CBA, as modified by the MOU, and thus was obligated to contribute to the Funds according to the terms of those agreements.

## III.    Analysis

### A. Standard of Review

Summary judgment is appropriate where the evidence in the record, viewed in its entirety, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing that no genuine issues of material fact exist." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516–17 (6th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986)). In reviewing a motion for summary judgment, courts are to "view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Williams v. Mauer*, 9 F.4th 416, 430 (6th Cir. 2021) (citation omitted). The ultimate question for the court to determine "is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne v. Novartis Pham. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

"[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56–138 (3d ed. 2000)). Because the Funds bear the burden of persuasion in their claim, to obtain summary judgment their showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for [them]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quotation omitted).

"When, as here, there are cross-motions for summary judgment, the Court considers them separately, and it is not necessary that either party is entitled to summary judgment; it is possible that neither party meets its burden." *Peatross v. Liberty Mutual Personal Ins. Co.*, 575 F. Supp. 3d 887, 891 (E.D. Mich. 2021) (citing *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021)). When considering the plaintiff's motion, the evidence is viewed in the light most favorable to the defendant and the burden is on the plaintiff to show that he is entitled to judgment as a matter

of law. *Id*. The opposite is true when considering the defendant's motion.
*Id*.

**B. Laramie's Obligations to the Funds**

The Funds assert that they are entitled to summary judgment against Laramie on their claims for unpaid employee benefit contributions under 29 U.S.C. § 1145 and 29 U.S.C. § 1132(g)(2). The Funds argue that Laramie has not demonstrated a genuine issue of material fact and that they are entitled as a matter of law to recover the unpaid contributions, as well as interest on those unpaid contributions, the greater amount of interest on the unpaid contributions or liquidated damages provided for under the plan, and reasonable attorney fees and costs of the action. 29 U.S.C. § 1132(g)(2).

Specifically, the Funds contend that Laramie was a dues-paying member of GLFEA, and as such, was bound to the terms of the CBA. Making certain employee fringe benefit contributions to the Funds for each union member Laramie employee covered by the CBA was one such obligation. The Funds note that Laramie contributed to the Funds according to the GLFEA collective bargaining agreements for many years prior to the 2018-2022 iteration, and that it had also undergone audits based on contributions under GLFEA agreements for many years. *See* ECF No. 129-

6, PageID.4877. The Funds point to 2012 correspondence from Laramie to the Union which acknowledges Laramie's participation "in the contract between [GLFEA] and the [Union]." ECF No. 129-7. They also point to Laramie and GLFEA's admission that Laramie was a dues-paying, allied member of GLFEA since at least January 1, 2016. ECF No. 130-8, PageID.5204–05. The Funds also highlight that Laramie does not challenge the validity or accuracy of the audit, nor offers any evidence to support such a challenge.

Yet, Laramie opposes the Funds' motion and supports its own by arguing that it was not bound to MOU, and thus owed no unpaid contributions to the Funds, because, contrary to the position it had taken throughout the four years this case has been pending, it had not authorized GLFEA to act as its bargaining representative for negotiations with the Union before the MOU was executed. This argument fails for numerous reasons.

First, and dispositively, an employer may be bound by a collective bargaining agreement negotiated by a multi-employer association and a Union "even though the employer did not sign the CBA or provide express written authority to the [association] to negotiate on its behalf." *Bd. of Trust. of the Plumbers, Pipe Fitters & Mech. Equip. Srvc. Local Union 392*

*Pension Fund v. B&B Mech. Srvcs., Inc.*, 813 F.3d 603, 610 (6th Cir. 2015). In so holding, the Sixth Circuit followed the "well-developed body of law allowing employer associations to bind employer members to collective bargaining agreements." *Id.* at 609 (quoting *Nat'l Leadburners Health & Welfare Fund v. O.G. Kelley & Co.*, 129 F.3d 372, 375 (6th Cir. 1997)) (internal quotation marks omitted). Acquiring membership in an employers' association that negotiates CBAs on behalf of its members as one of its principal functions constitutes actual authority for the association to bind the member-employer. *See id.* at 610 (citing *Trust. of U.I.U. Health & Welfare Fund v. N.Y. Flame Proofing Co.*, 828 F.2d 79, 83 (2d Cir. 1987)).

In opposing the Funds' motion for summary judgment, Laramie does not dispute it was a member of GLFEA at the time both the CBA and the MOU were executed. Nor does Laramie argue that it was not bound to the original CBA.[1] Indeed, Laramie acknowledges that it made contributions to

---

[1] At the hearing on these motions, counsel for Laramie seemingly argued that it was not bound by the CBA because its name was not included on a list of employers provided to Laramie during discovery. *See* ECF No. 130-4, PageID.5115. According to counsel, this list of GLFEA members were the only ones bound by CBA, citing language in Article XIX of the CBA, which required GLFEA to advise the Union and the Funds, in writing, of the names and addresses of all GLFEA members, as of the beginning date of the CBA. ECF No. 129-3, PageID.4825. But that provision of the CBA pertains only to the security deposit employers must make to the Funds to guaranty payment and the Union's recognition of GLFEA as surety for its members for the amount of that security deposit. *Id.* The language cited by Laramie's counsel

the Funds that were "*indisputably paid under [the] CBA*." ECF No. 134, PageID.5609 (emphasis added). Rather, Laramie argues that it was not bound by the MOU because "no notice of change was provided to Laramie by the Union **before** the MOU was signed, as required by the 2018 CBA." ECF No. 134, PageID.5609. Laramie does not cite to a specific provision in the CBA that would require the Union to notify individual employers before the CBA could be effectively modified, and the Court's review of the CBA revealed only an obligation of written notification to "the other party" of the first party's desire to change or terminate the CBA. *See* ECF No. 129-3, PageID.4838. The Union and GLFEA, not the individual GLFEA member-employers, are the parties of the CBA who are required and entitled to give and receive notice under this provision. *See id.*, PageID.4840. Accordingly, nothing in the CBA required GLFEA and the Union to notify Laramie before executing a MOU changing the CBA; Laramie offers no other rationale for how it could be bound to the original CBA, but not the MOU.

Moreover, under ERISA, multi-employer fringe benefit trust funds become third-party beneficiaries to the collective bargaining agreement and

---

only required GLFEA to advise the Union and the Funds, in writing, of the names and addresses of all GLFEA members *who are covered by GLFEA's surety agreement*. *Id*. at 4826. The absence of Laramie's name from a list of members provided according to Article XIX of the CBA has no bearing on whether it is bound by the CBA.

"may rely on the literal terms of the written agreements." *B&B Mech. Srvc*s., 813 F.3d at 609 (citing 29 U.S.C. § 1145). Thus, even if GLFEA or the Union violated the CBA by not notifying Laramie of the proposed MOU, the Funds could still rely on the terms of the CBA, as modified by the MOU, and collect fringe benefit contributions accordingly. If either GLFEA or the Union violated a notification duty owed to Laramie, its recourse would be against the CBA party responsible for notification.[2]

In its own motion for summary judgment, Laramie advances an entirely different, conflicting reason it is not subject to the terms of the MOU. Contradicting its oft-asserted argument that it was not subject to the MOU but was bound by the terms of the original CBA, Laramie contends in its motion that it contributed to the Funds not under the CBA but under a separate collective bargaining agreement that it executed directly with the Union. ECF No. 130, PageID.4922; *see* ECF No. 130-2. The Court rejects this blatantly specious argument.

First, as the Funds point out, the collective bargaining agreement Laramie references is not between the Union and Laramie Enterprises,

---

[2] Laramie filed a third-party complaint against GLFEA and a counterclaim against the Union, but those actions were both previously dismissed by the Court. *See* ECF Nos. 43, 114.

Inc., the defendant here, but rather between the Union and Laramie Equipment, Inc., a separate entity engaged in "the repair, maintenance, servicing, and handling of all construction equipment that it owns, sells, services, or rents." ECF No. 130-2, PageID.4992; ECF No. 133-8, PageID.5424. Second, as previously noted, Laramie acknowledges, both tacitly and explicitly in its response in opposition to the Funds' motion, that it made contributions under the CBA. *See* ECF No. 134. Third, Laramie does not dispute that it contributed under the CBA predecessors dating back at least to 1997. *See* ECF No. 129-6, PageID.4877. Laramie also identified itself as a participant in an earlier contract between GLFEA and the Union. ECF No. 129-7.

Most notably, Laramie is further bound to the CBA, as modified by the MOU, by the terms of the collective bargaining agreement between The Association of General Contractors ("AGC") and the Union ("AGC Agreement"). The AGC Agreement requires its member-employers to comply with the agreement between GLFEA and the Union (the CBA) whenever the employer performs work covered under that agreement. *See* ECF No. 133-11, PageID.5479. The Funds offer evidence that Laramie was among the employers who executed power of attorney authorizing AGC to act as its collective bargaining representative for the AGC Agreement. *See*

ECF No. 133-8, PageID.5424, 5431. Thus, even if the Court accepted Laramie's assertion that it was not otherwise subject to the terms of the CBA, as amended by the MOU, it was undisputedly obligated to comply with it under the terms of the AGC Agreement.

The Court finds that Laramie has offered no valid explanation for why the CBA, as modified by the MOU, does not apply to and bind Laramie to contributing to the Funds according to its terms,[3] and has offered no argument or evidence to create a genuine issue as to any material fact. Under the terms of the CBA, as modified by the MOU, Laramie's undisputed GLFEA membership at the time of the CBA and MOU's execution, and the unchallenged and unrebutted audit findings, the Funds have met their burden of persuasion and are thus entitled to summary judgment against Laramie on their claim for unpaid fringe benefit contributions in the amount of $42,737.30. The Funds are also entitled to interest, liquidated damages, and attorney fees and costs for the action under 29 U.S.C. § 1132(g)(2) but the Court has not been provided with any

---

[3] Because the Court finds that Laramie, as a member of GLFEA and under the terms of the AGC Agreement, is bound to the CBA, as modified by the MOU, it need not address the Funds' arguments that Laramie was subject to the CBA because its conduct demonstrated assent or that Laramie should be estopped—by judicial estoppel, admission, or law of the case—from arguing that GLFEA had no authority to execute the MOU on its behalf.

calculation or supporting documentation for the determination of these amounts.

## IV. Conclusion

For these reasons, the Court **DENIES** Laramie's Motion for Summary Judgment (ECF No. 130), **GRANTS** the Funds' Motion for Summary Judgment (ECF No. 129) and awards the Funds the requested relief of $42,737.30 for unpaid employee benefit contributions only. The Funds may supplement their motion to supply the Court with calculations and supporting documentation for interest, liquidated damages, and reasonable attorney fees and costs, as allowed by statute, by **July 23, 2026.**

**IT IS SO ORDERED.**

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: June 25, 2026